O

# United States District Court
# Central District of California

| | |
|---|---|
| FRANCISCO LONGORIA,<br><br>  Plaintiff,<br><br>  v.<br><br>KRISTI NOEM et al.,<br><br>  Defendants. | Case № 5:25-cv-03098-ODW (DFMx)<br><br>**ORDER GRANTING UNOPPOSED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [2]** |

## I. INTRODUCTION

Petitioner Francisco Longoria applies *ex parte* for a temporary restraining order requiring, among other things, his release from custody or an individualized bond hearing before an immigration judge. (Mem. P. &. A. ISO Ex Parte Appl. ("TRO") 1, Dkt. No. 2-1.) Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Ernesto Santacruz Jr., Acting Director of L.A. Field Office ICE Enforcement and Removal Operations; Fereti Semaia, Warden, Adelanto ICE Processing Center ("Adelanto"); Executive Office for Immigration Review ("EOIR"); ICE; and DHS have not opposed the request. For the reasons discussed below, the Court **GRANTS** Petitioner's TRO.

## II. BACKGROUND

Petitioner resides in California. (Pet. ¶ 48, Dkt. No. 1.) He has no criminal history and no previous contact with immigration authorities. (*Id.*)

On August 28, 2025, ICE agents detained Petitioner in San Bernardino, California, and subsequently charged him with being present in the United States without admission. (*Id.* ¶¶ 49–50.) Petitioner is currently detained at Adelanto. (*Id.* ¶ 49.) ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be conditionally released. (*Id.* ¶ 51.)

Earlier this year, on July 8, 2025, ICE, in coordination with the Department of Justice, announced a new policy ("New Policy") concerning the treatment of individuals who entered the United States without inspection. (*Id.* ¶¶ 35–36.) Prior to the New Policy, "people who entered the country without inspection" and were "present without admission," like Petitioner, were detained under 8 U.S.C. § 1226(a), which allows for release on bond or conditional parole. (*Id.* ¶¶ 32–34.) However, under the New Policy, these individuals are now being deemed to be "applicants for admission" under 8 U.S.C. § 1225(b)(2)(A), and subject to mandatory detention without the possibility of bond or conditional parole. (*Id.* ¶ 36; TRO 1–2.) DHS and EOIR have applied this New Policy to Petitioner. (Pet. ¶ 5.) Further, the Board of Immigration Appeals ("BIA") interprets the New Policy to apply to any person who entered the United States without inspection, finding them all to be "applicants for admission" and holding that immigration judges ("IJ") have no authority to consider their bond requests. (*Id.*) Petitioner is thus detained without the ability to obtain a bond hearing before an IJ. (*Id.*)

Based on these allegations, on November 18, 2025, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that his detention is unlawful and violates: § 1226(a); DHS and EOIR Bond Regulations; the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); and Petitioner's Fifth Amendment right to due process. (*Id.* ¶¶ 53–66.) That same day, Petitioner filed this Application for a Temporary

Restraining Order ("TRO") and Order to Show Cause. (Ex Parte Appl., Dkt. No. 2.) In the TRO, Petitioner seeks an order (1) requiring Respondents to release him or provide him with an individualized bond hearing before an IJ pursuant to § 1226(a) within seven days, (2) declaring that § 1226(a) governs Petitioner's detention and that his detention under § 1225(b)(2) is unlawful; (3) enjoining Respondents from relocating him outside of the Central District of California pending final resolution of this case, and (4) requiring Respondents to show cause why a preliminary injunction should not issue. (*Id.* at 1.) Petitioner notified Respondents of his TRO and provided a copy of all filed documents; Respondents' counsel acknowledged receiving notice. (Decl. Jean Reisz ISO TRO ¶¶ 3–6, Exs. A–C, Dkt. No. 6.) Although Respondents initially indicated to Petitioner that they would oppose, (TRO 3), the Court has received no opposition to the TRO.

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale: "serious questions going to the merits . . . and a balance of hardships that tips sharply

towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV. DISCUSSION

Petitioner demonstrates that the *Winter* factors weigh in favor of an injunction.

### A. Likelihood of Success on the Merits

Petitioner contends that § 1226(a), not § 1225(b)(2), governs his detention. (TRO 4–16.) Respondents do not oppose.

The Court has considered this identical issue in nearly identical factual circumstances and incorporates and adopts by reference its analyses in those recent decisions. *See Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *2–4 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (ADSx), 2025 WL 2633187, at *2–3 (C.D. Cal. Aug. 13, 2025); *see also Saucedo v. Noem*, No. 2:25-cv-11051-ODW (RAOx) (C.D. Cal. Nov. 20, 2025) (order granting temporary restraining order). For the reasons stated in those decisions, the Court finds again that the statutory text does not support the notion that § 1225 governs where, as here, an alien is present in the United States without admission. *See Gonzalez*, 2025 WL 2633187, at *4 ("If Respondents are correct that Congress meant for § 1225 to govern all aliens present in the United States who had not been admitted, it would render the exception made under § 1226(c)(1)(E) unnecessary." (internal quotation marks omitted)). To the contrary, the plain text actually supports Petitioner's argument that § 1226(a) applies to his detention. (TRO 4–13); *see Arrazola-Gonzalez*, 2025 WL 2379285, at *2 ("[Section 1226] 'applies to aliens already present in the United States.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018))).

As in prior cases presenting these circumstances, the Court finds here that Petitioner shows a likelihood of success on the merits of his claim that § 1226(a), not § 1225, governs his detention.[1]

**B.  Likelihood of Irreparable Harm**

Petitioner contends that he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained without a bond hearing before an IJ. (TRO 16–17.)  Respondents do not oppose.

The harm resulting from Petitioner's continued detention is the deprivation of his right to a bond hearing and due process.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that "[f]reedom from imprisonment . . . lies at the heart of the liberty" that the Due Process Clause protects); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))).  The Court finds that Petitioner's continued detention without a bond hearing causes, and will continue to cause, immediate and irreparable injury.

**C.  Balance of Equities and Public Interest**

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Petitioner contends that a TRO is in the public interest because he is challenging the New Policy for violating federal laws and the Constitution, and that Respondents cannot be harmed by being required to end an unlawful practice. (TRO 17–18.)  Respondents do not oppose.

As the Court has previously expressed, "to the extent that the BIA's adopted statutory interpretation deprives Petitioner[] of [his] constitutional rights and violates federal law, 'it is clear that neither equity nor the public's interest are furthered by

---

[1] Petitioner also argues that prudential exhaustion is not required, based on futility, irreparable injury, and agency delay. (TRO 18–22.) Respondents do not oppose. "As the BIA's interpretation of the statutory language is being challenged in this instance, Petitioner['s] assertion that an appeal would be futile is persuasive." *See Arrazola-Gonzalez*, 2025 WL 2379285, at *3.

allowing violations of federal law to continue.'" *Gonzalez*, 2025 WL 2633187, at *6 (quoting *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)). Accordingly, the balance of equities and the public interest factors also favor injunctive relief.

## V. CONCLUSION

For the reasons discussed above, the Court finds that all four *Winter* factors weigh in favor of a TRO. Accordingly, the Court **GRANTS** the TRO. (Dkt. No. 2.) It is hereby **ORDERED** that:

- Respondents shall release Petitioner or, in the alternative, provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) **within seven (7) days** of this Order;
- Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this case; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **December 2, 2025**, as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a reply by **December 4, 2025**. The Court **SETS** a hearing on the preliminary injunction for **December 10, 2025, at 9:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

November 25, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**